**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**December 30, 2014**

# In the Court of Appeals of Georgia

A14A1539. LOCKWOOD v. FEDERAL DEPOSIT INSURANCE CORP., AS RECEIVER FOR SILVERTON BANK, N.A.

DILLARD, Judge.

Joseph K. Lockwood appeals the trial court's grant of summary judgment to the Federal Deposit Insurance Corp. ("FDIC"), as receiver for Silverton Bank, N.A., on the FDIC's action on a promissory note. On appeal, Lockwood contends that the trial court erred in granting the FDIC's motion for summary judgment when (1) the FDIC failed to provide notice in the manner delineated by OCGA § 13-1-11 (a) (3); (2) there was a genuine issue of material fact as to the amount owed upon the note; and (3) discovery was still pending. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the nonmovant (Lockwood),[1] the record reflects that on September 14, 2007, Lockwood executed a promissory note in the principal amount of $120,000.00 with the Bankers Bank, N.A., which later changed its name to Silverton Bank, N.A. Silverton Bank subsequently went into receivership with the FDIC acting as receiver.

On March 7, 2013, the FDIC sent Lockwood a notice of default and demand for immediate payment upon the promissory note, demanding payment of $83,053.08 it claimed remained due on the note, in addition to accruing interest. The demand also purported to give notice of the FDIC's intent to enforce the provisions of the note requiring Lockwood to pay all costs, including attorneys fees, if full payment was not made within 10 days.

When payment was not forthcoming, the FDIC filed its verified complaint for breach of promissory note on April 1, 2013. The FDIC then filed a motion for summary judgment in September 2013. This motion was supported by an affidavit from one of the FDIC's asset managers, who averred that $80,036.09 remained unpaid on the principal balance and that unpaid interest had accrued up to $3,304.36

---

[1] *See Angel Bus. Catalysts, LLC v. Bank of the Ozarks*, 316 Ga. App. 253, 254 (728 SE2d 854) (2012); *accord Kensington Partners v. Beal Bank Nevada*, 311 Ga. App. 196, 196 (715 SE2d 491) (2011).

as of March 28, 2013, and would continue to accrue at a rate of $13.0624 per day. Additionally, the asset manager averred that late charges were owed in the amount of $200[2] and that the note provided for the recovery of 15 percent of the principal and interest as attorney fees. In support of these averments, a loan-statement and loan-history sheet were attached as exhibits.

The trial court granted the FDIC's motion for summary judgment in November 2013, awarding judgment in the amount of $83,340.45 plus per diem interest,[3] attorney fees and expenses of 15 percent of the principal and interest, court costs, and post-judgment interest. This appeal by Lockwood follows.

1. First, Lockwood contends that the trial court erred in awarding attorney fees when the FDIC failed to provide correct notice under OCGA § 13-1-11 (a) (3). We disagree.

OCGA § 13-1-11 provides, in relevant part, that

[t]he holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing

_____

[2] Thus, the total amount of money owed upon the note at that time, with interest and late charges, was $83,540.45.

[3] Neither Lockwood nor the FDIC makes any contention regarding the fact that the trial court awarded $83,340.45 as opposed to the $83,540.45 that the FDIC's asset manager averred was owed, and so we do not address this discrepancy.

3

the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has *ten days from the receipt of such notice* to pay the principal and interest without the attorney's fees.[4]

And as we recently emphasized, compliance with the notice requirement of OCGA § 13-1-11 (a) (3) is a "mandatory condition precedent" to the recovery of attorney fees under this statute.[5]

Here, the FDIC's March 7, 2013 letter to Lockwood informed him of his default upon the promissory note and demanded payment of the remaining amount due, as well as instructed him that it was giving him notice under OCGA § 13-1-11 (a) (3) that if he "fail[ed] to pay the [i]ndebtedness within ten (10) days of [the] letter," it would initiate legal action and seek all available remedies, including attorney fees and expenses.

---

[4] OCGA § 13-1-11 (a) (3) (emphasis supplied).

[5] *Best v. CB Decatur Court, LLC*, 324 Ga. App. 403, 409 (2) (b) (750 SE2d 716) (2013); *accord Core LaVista v. Cumming*, 308 Ga. App. 791, 798 (2) (709 SE2d 336) (2011).

Lockwood contends on appeal that the trial court erred in awarding attorney fees when this notice was deficient by its failure to specify that payment was due within ten days of *receipt* of the letter. And while he is correct that the March 2013 letter failed to comply with the dictates of OCGA § 13-1-11 (a) (3),[6] the trial court did not err in awarding attorney fees because the FDIC provided sufficient notice under the statute in its later-filed complaint.[7] Indeed, in addition to referencing the notice-

[6] *See Adair Realty & Loan Co. v. Williams Bros. Lumber Co.*, 112 Ga. App. 16, 16 (143 SE2d 577) (1965) ("[T]he notice given by the holder of the note to the maker is deficient in that the alleged notice did not contain the statutory *requirement informing* the maker that she had ten days from the receipt of the notice to pay the principal and interest of the note without obligating herself for the payment of attorney's fees . . . . The notice here while otherwise substantially complying with the requirements of the statute, merely advised the maker that, if she did not make arrangements to pay the note in full within ten days from the date of the notice, rather than from the date of its receipt by her, plaintiff would claim attorney's fees provided for in the notice."); *see also Gen. Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 114 (249 SE2d 596) (1978) ("[OCGA § 13-1-11] is clearly intended to require the creditor to give the debtor an opportunity to meet his obligation without incurring additional expenses in the nature of attorney fees. This opportunity is given by notification to a debtor that he will have *10 days from the receipt of notice* in order to pay principal and interest, thus avoiding liability for attorney fees." (emphasis supplied)).

[7] *See Long v. Hogan*, 289 Ga. App. 347, 347 (656 SE2d 868) (2008) (noting that the "complaint gave the ten-day notice required by OCGA § 13-1-11 (a) (3)"); *Upshaw v. S. Wholesale Flooring Co.*, 197 Ga. App. 511, 513 (4) (398 SE2d 749) (1990) (holding that notice in complaint was sufficient to satisfy OCGA § 13-1-11); *Shier v. Price*, 152 Ga. App. 593, 595 (2) (263 SE2d 466) (1979) ("Notice in accordance with [OCGA § 13-1-11] that the provision for 10% attorney fees in the note would be enforced if the principal and interest owing thereon were not received

5

of-default letter, the FDIC's complaint separately provided notice (1) of its intention to "enforce the provisions of the Note that require [Lockwood] to pay all costs, including attorney fees, in addition to all other amounts due," and (2) that if he "fails to pay all principal and interest owing on the Note within *ten (10) days of receipt of this Complaint*, he will be obligated for the payment of attorney fees in accordance with Georgia law."[8]

Thus, notwithstanding the deficient notice in the FDIC's notice-of-default letter, the separate notice in the complaint satisfies the dictates of OCGA § 13-1-11 (a) (3).[9] It is well settled that notice under this statute "may be given any time

within ten days was included in the complaint. This is a proper notice."); *see also New House Prods., Inc. v. Commercial Plastics & Supply Corp.*, 141 Ga. App. 199, 200 (3) (233 SE2d 45) (1977).

[8] Emphasis supplied.

[9] *See New House Prods.*, 141 Ga. App. at 200 (3) (holding that, when appellant denied receiving notice, the later-filed complaint provided sufficient notice); *see also Long*, 289 Ga. App. at 347; *Upshaw*, 197 Ga. App. at 513 (4); *Shier*, 152 Ga. App. at 595 (2); *cf. Best,* 324 Ga. App. at 409-10 (2) (b) (holding that a complaint does not satisfy the dictates of OCGA § 13-1-11 (a) (3) when it merely recites that notice for attorney fees under the statute has been given to and received by the defendant more than 10 days before the filing of the complaint, and that, as a result of this notice, plaintiff is entitled to such fees, because this type of recital does not provide an "*opportunity* to avoid paying attorney fees by timely curing the default"); *Core LaVista*, 308 Ga. App. at 798-99 (2) (holding that neither the demand letters nor the complaint satisfied the notice requirement of OCGA § 13-1-11 (a) (3) because none

6

between the maturity of the obligation and ten days prior to judgment."[10] As such, when a pleading, setting up a claim on a note or other evidence of indebtedness which authorizes recovery of attorney fees, "alleges that notice of intent to seek attorney fees has been given and that notice is thereby given, and the notice otherwise conforms to the requirements of [OCGA § 13-1-11 (a) (3)], the notice is sufficient to authorize an award of attorney fees."[11] Accordingly, the trial court did not err in awarding attorney fees to the FDIC.[12]

---

of them advised defendant that he had an opportunity to avoid paying attorney fees by timely curing the default).

[10] *New House Prods.*, 141 Ga. App. at 200 (3); *see also Turner v. Bank of Zebulon*, 128 Ga. App. 404, 406 (3) (196 SE2d 668) (1973) ("Failure to give notice before commencement of the action does not preclude the recovery of attorneys' fees." (punctuation omitted)); *One In All Corp. v. Fulton Nat'l Bank*, 108 Ga. App. 142, 144 (2) (132 SE2d 116) (1963) ("We are of the opinion that failure to give notice before commencement of the action does not preclude the recovery of attorneys' fees . . . .").

[11] *New House Prods.*, 141 Ga. App. at 200 (3).

[12] *See Termnet Merch. Servs., Inc. v. Phillips*, 277 Ga. 342, 344-45 (1) (588 SE2d 745) (2003) ("[T]he trial court is without discretion to deny fees under section 13-1-11 when all the conditions of that statute are unquestionably satisfied.").

2. Next, Lockwood argues that the trial court erred in awarding $83,340.45 to the FDIC when there was a genuine issue of material fact as to the amount owed upon the note. Again, we disagree.

Although Lockwood does not dispute that a sum is owed upon the note, he takes issue with the amount awarded by the trial court and points to alleged inconsistencies in the documents attached to the asset manager's affidavit when the attached exhibits showed "unapplied credits" and "unapplied payments" with no given explanation. Additionally, Lockwood asserts that the asset manager had no personal knowledge as to the attached evidence.

(a) First, as to the issue of personal knowledge, in his affidavit, the asset manager set out his role and personal access to and knowledge of the records that were transmitted to the FDIC when Silverton Bank was placed into receivership, which included the payment records attached to his affidavit as an exhibit, and which records he averred were "kept and maintained in the course of regularly and necessarily conducted business activity." And we have consistently rejected similar arguments as to an alleged lack of personal knowledge when records have been

8

transferred between businesses.[13] This line of precedent applies here, too, despite the fact that the motion for summary judgment was filed, considered, and ruled upon after the provisions of Georgia's new Evidence Code went into effect.[14] Accordingly, Lockwood's argument as to a lack of personal knowledge by the asset manager is without merit.

(b) Second, as to Lockwood's argument that the payment records contain inconsistencies giving rise to a genuine issue of material fact as to the amount owed, this contention likewise lacks merit. Indeed, the payment-history records reflect payments and late charges, as well as a total of $80,036.09 owed upon the remaining principal balance as of September 19, 2013. Nevertheless, Lockwood argued before the trial court and argues again before this Court that the payment-history records

---

[13] *See Angel Bus. Catalysts, LLC v. Bank of the Ozarks*, 316 Ga. App. 253, 255-56 (1) (728 SE2d 854) (2012) (holding that, when "routine, factual documents made by one business are transmitted and delivered to a second business and there entered in the regular course of business of the receiving business, such documents are admissible" as business records); *Jenkins v. Sallie Mae, Inc*., 286 Ga. App. 502, 503 (2) (649 SE2d 802) (2007) (holding that documents of predecessor were properly admitted as business records of successor business); *Boyd v. Calvary Portfolio Svcs., Inc.*, 285 Ga. App. 390, 391 (1) (646 SE2d 496) (2007) (holding that documents of predecessor were properly admitted as business records of successor business).

[14] *See Ware v. Multibank 2009-1 Res-ADC Venture, LLC*, 327 Ga. App. 245, 248-49 (2) (758 SE2d 145) (2014) (holding that, under new Evidence Code, affiant sufficiently authenticated records that had been transferred between businesses).

contain inconsistencies as to the amount owed upon the principal because the records include "unapplied payments" and other "unapplied credits" with no explanation as to why these payments and credits did not apply to the principal balance.

It is well established that, in an action on a promissory note, the plaintiff has the burden of proving that the "defendant is indebted to him and in a definite and correct amount."[15] Here, the FDIC presented the payment-history records showing a definite amount outstanding on the principal balance and also submitted an affidavit from the asset manager authenticating the records.[16] And after the FDIC produced this evidence, Lockwood was not at liberty to rest upon his pleadings, but was instead required to point to specific evidence giving rise to a triable issue concerning his indebtedness.[17] As we have previously explained, mere conclusions are "not sufficient

[15] *Bogart v. Wisc. Inst. for Torah Study*, 321 Ga. App. 492, 495 (3) (739 SE2d 465) (2013) (punctuation omitted); *accord White Stores v. Washington*, 135 Ga. App. 67, 67 (217 SE2d 391) (1975).

[16] *Cf. Myers v. First Citizens Bank & Trust Co.*, 324 Ga. App. 293, 296 (2) (750 SE2d 378) (2013) (vacating and remanding on question of amount owed when bank "provided no evidence regarding the amounts, if any, that the [appellants] had paid toward the notes" and when affiant "did not explain how such damages were calculated, and the only documents attached to his affidavit as exhibits were copies of the promissory notes").

[17] OCGA § 9-11-56 (e) ("When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the

10

to withstand specific facts,"[18] and a party opposing a motion for summary judgment, when the moving party has presented evidence of the necessary certitude, "must, in his opposing affidavits, set forth specific facts showing a genuine issue to be decided."[19]

In the case *sub judice*, Lockwood's speculations as to the potential impact of the otherwise nondescript "unapplied payments" and "unapplied credits" to his indebtedness were not sufficient to overcome the FDIC's *prima facie* case that Lockwood owed a "definite and certain amount" as reflected in the outstanding principal balance.[20] Indeed, Lockwood did not submit any documentary

---

mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."); *see also Bogart*, 321 Ga. App. at 495 (3); *Trebor Corp. v. Nutmeg Indus.*, 208 Ga. App. 697, 697-98 (1) (431 SE2d 402) (1993).

[18] *Bogart*, 321 Ga. App. at 495 (3) (punctuation omitted); *accord Trebor Corp.*, 208 Ga. App. at 697 (1).

[19] *Bogart*, 321 Ga. App. at 495 (3) (punctuation omitted); *accord Trebor Corp.*, 208 Ga. App. at 697-98 (1).

[20] *See Int'l Furniture Distribs., Inc. v. Lifschultz Fast Freight, Inc.*, 176 Ga. App. 102, 102 (2) (335 SE2d 628) (1985) ("Appellant's second enumeration, that the grant of summary judgment to appellee was error, is supported by two arguments. The first is that appellant showed by an affidavit that it had credits due it from appellee for damages to the material transported by appellee. However, the affidavit on which

11

evidence—for example, copies of endorsed checks—of payments he made that had not already been credited to the principal balance.[21] Accordingly, the trial court did not err in awarding the FDIC with the $80,036.09 that its evidence showed remained outstanding on the principal balance.

3. Lastly, Lockwood argues that the trial court erred in granting summary judgment when discovery was still pending between the parties. Once again, we disagree.

Under OCGA § 9-11-56, "[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be

---

appellant relies sets forth no facts to support the conclusion in the affidavit that appellant was entitled to certain credits. Such conclusory showings will not prevent the grant of summary judgment."); *see also Bogart*, 321 Ga. App. at 495 (3); *Trebor Corp.*, 208 Ga. App. at 697-98 (1).

[21] *Cf. Yalanzon v. Citibank (South Dakota), N.A.*, 169 Ga. App. 961, 962 (315 SE2d 677) (1984) ("[Appellant] asserted in his answer that his liability would not exceed the approximate amount of $300.00, and he submitted affidavits alleging that he had not been credited with various payments made on the account. Attached to one of these affidavits were seven checks totalling in excess of $600.00, all endorsed by Citibank and dated between November 1980 and April 1981. Citibank has not submitted any detailed statement of the account from which it might be determined whether these payments were properly credited to [appellant].").

obtained or depositions to be taken or discovery to be had, or may make such other order as is just.”[22] And here, Lockwood argues that the trial court erred by granting summary judgment to the FDIC when its discovery responses were not due until after the deadline for his response to the motion for summary judgment.

The record reflects that when the FDIC commenced this action in April 2013, it concurrently commenced discovery by serving Lockwood with requests for admissions. However, Lockwood did not serve the FDIC with written discovery requests until one week *after* it filed its motion for summary judgment in September 2013. The responses to Lockwood's requests were due November 7, 2013, but the FDIC responded on November 1, 2013.[23] Nevertheless, Lockwood filed his response to the motion for summary judgment that same day and did not thereafter supplement his response. In his response, Lockwood asserted that outstanding responses to his discovery requests rendered him "unable to put forward his complete defense" to the motion and, additionally, he averred that "because discovery is ongoing, the balance

---

[22] OCGA § 9-11-56 (f).

[23] The FDIC responded to requests for admissions, continuing interrogatories, and continuing requests for production of documents.

13

of principal remaining on the Note is unknown." The trial court ruled upon the motion on November 13, 2013.

First, regardless of whether or not Lockwood received responses to his discovery requests prior to filing his response to the motion for summary judgment, he made no attempt to rely upon his own documentation as to payments made and allegedly uncredited toward the principal balance.[24] Additionally, in requesting a continuance, Lockwood did not "show that if the continuance were granted, what relevant and material evidence would be produced in opposition to the motion for summary judgment."[25] Moreover, despite his assertion that discovery requests remained outstanding, the record reflects that the FDIC served Lockwood with its responses the same morning he filed his opposition to the motion for summary judgment. Despite this fact, Lockwood took no further action to supplement his

---

[24] *See supra* Division 2 (b).

[25] *Gilco Invest., Inc. v. Stafford Cordele, LLC*, 267 Ga. App. 167, 169 (1) (598 SE2d 889) (2004); *see also NationsBank, N.A. v. SouthTrust Bank of Ga., N.A.*, 226 Ga. App. 888, 896 (2) (487 SE2d 701) (1997) (noting that OCGA § 9-11-56 (f) requires an appellant "to set forth the reasons for a continuance and . . . what relevant and material evidence would be produced in opposition to the motion for summary judgment").

14

response.[26] Under these facts, the trial court did not abuse its discretion in granting summary judgment to the FDIC.[27]

Accordingly, for all of the foregoing reasons, we affirm the trial court's grant of summary judgment to the FDIC.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[26] *See* OCGA § 9-11-56 (c) ("The adverse party prior to the day of hearing may serve opposing affidavits.").

[27] *See Sims v. First Acceptance Ins. Co. of Ga., Inc.*, 322 Ga. App. 361, 367 (4) (745 SE2d 306) (2013) ("The granting or denial of a motion under OCGA § 9-11-56 (f) lies in the sound discretion of the trial judge." (punctuation omitted)); *JarAllah v. Schoen*, 243 Ga. App. 402, 406 (531 SE2d 778) (2000) (holding that trial court did not abuse its discretion in ruling upon summary judgment motion instead of granting continuance when appellant "did not demonstrate that a continuance would lead to the discovery of relevant evidence").